Melvin McGOWAN, Plaintiff-Appellee Cross-Appellant,

v.

CREDIT CENTER OF NORTH JACKSON, INC., et al., Defendants-Appellants Cross-Appellees.

No. 75–2903
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Jan. 27, 1977.

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5 Cir. 1970, 431 F.2d 409, Part I.

**74**

Gid Montjoy, IV, Jackson, Miss., for defendants-appellants cross-appellees.

John L. Walker, Jackson, Miss., for plaintiff-appellee cross-appellant.

Before AINSWORTH, CLARK and RONEY, Circuit Judges.

CLARK, Circuit Judge:

Defendants appeal from the grant of a summary judgment in favor of the plaintiff borrower in this Truth-in-Lending case. 15 U.S.C. §§ 1601 *et seq.*; Regulation Z, 12 C.F.R. §§ 226.1 *et seq.* (1969). The borrower's summary judgment motion alleged four violations: 1) failure to disclose terms of insurance; 2) misleading and confusing non-essential disclosures; 3) failure to label the broker's service charge as a "Prepaid Finance Charge"; and 4) failure to disclose the amount of credit for the actual use of the borrower. Only the last two claims are subjects of this review. The insurance claim was decided adversely to plaintiff, and that ruling is not complained of on appeal. The district court did not reach the misleading disclosure claim because it involved a factual dispute.

On December 2, 1974, in its first opinion, the district court held that the failure to label the broker's fee as a prepaid finance charge violated Regulation Z, 12 C.F.R. § 226.8(d)(2), (e)(1) (1969). Pending the defendants' motion to reconsider, a group of district court cases that took a position opposite to the court's initial ruling was decided by the United States District Court for the Northern District of Georgia. *See Slatter v. Aetna Finance*, 377 F.Supp. 806 (N.D. Ga.1974). Although this development caused the district court to reverse its ruling on the prepaid finance charge, it nevertheless again granted summary judgment for the borrower on April 2, 1975, this time on the basis of the defendants' failure cor-

rectly to disclose the amount of credit disbursed for borrower's actual use in violation of 12 C.F.R. § 226.8(d)(1) (1969). In this court, the defendants contend that the district court erred in assessing liability for this failure. The plaintiff cross-appeals on the refusal to grant relief on the prepaid finance charge issue and on the amount of attorney's fees awarded. We affirm the judgment fixing liability but on grounds exactly opposite to those assigned by the district court and vacate and remand the attorney's fee holding.

On June 8, 1973, Mr. McGowan and his wife applied for a loan from Credit Center of North Jackson, Inc., a small loan broker licensed under Mississippi law. The broker arranged for Guaranty Loan Corporation, a licensed lender, to finance the transaction. For its brokerage service, Credit Center charged a fee of $168.63. The disclosure statement furnished to McGowan separately listed the "Broker's Service Charge" under the "Finance Charge" heading and excluded the amount from the "amount financed" entry.[1]

Although the face amount of the note was $840, McGowan received a check for only $208.49. In addition to interest, broker's service fee, and insurance premium charges connected with the making of the loan, the sum of $325.96 was deducted to retire two obligations previously incurred by McGowan's wife. The plaintiff was informed of the deductions as evidenced by his acknowledgment of calculations prepared by the lender on a "worksheet" prior to the consummation of the loan. The disclosure statement nowhere itemized the deductions for the loan payoffs, however, and the deducted amount was included in the sum listed under the "Net Proceeds to Borrower" entry.

## A. Itemization of the Borrower's Funds

■ The district court correctly determined that under the scheme contemplated by the Truth-in-Lending Act, both the broker and the lender are classified as "creditors" who must make the required disclosures before effecting a credit transaction. 15 U.S.C. § 1602(f); 12 C.F.R. § 226.2(m) (1969). The failure of the defendants to itemize separately the amounts of the loan proceeds applied to pay off the previous indebtednesses requires consideration of both statutory and accompanying regulatory provisions. 15 U.S.C. § 1639(a); 12 C.F.R. § 226.8(d)(1) (1969). In *Pollock v. General Finance Corp.*, 535 F.2d 295 (5th Cir. 1976), a lender was found to be liable for failing to disclose the basic amount of the loan proceeds, despite the fact that both the "amount financed" and the individual insurance charges connected with the making of the loan were correctly disclosed. Our holding was predicated on the distinct requirements of the statute and the regulation. Under 15 U.S.C. § 1639(a), a lender is required to disclose:

1) The amount of credit of which the obligor will have the actual use, or which

---

1. In pertinent part the disclosure statement read:

### Details of Transaction

| | | | |
|---|---|---|---|
| 1. | Net Proceeds to Borrower | | $534.45 |
| 2. | Insurance Premiums | | |
| | A. Credit Life Insurance | $ 14.70 | |
| | B. Health & Accident Ins. | $ 25.20 | |
| | C. Property Insurance | $ 14.70 | |
| | Total Insurance Cost | | $ 54.60 |
| 3. | Recording & Official Fees | | $ 2.50 |
| 4. | Other (Describe if any) _____ | | $_____ |
| 5. | AMOUNT FINANCED (Proceeds to borrower and designees, sum of 1, 2, 3, 4.) | | $591.55 |

| | | | |
|---|---|---|---|
| 6. | FINANCE CHARGE includes: | | |
| | A. Broker Service Charge | $168.63 | |
| | B. Lender Interest | $ 79.82 | |
| | C. Other (Describe if any) | | |
| | _____ | $_____ | |
| | TOTAL FINANCE CHARGE (Sum of A, B, C) | | $248.45 |
| 7. | Amount of Note (Total of Payments (Sum of 5, 6.) | | $840.00 |
| | Total Finance Charge as an ANNUAL PERCENTAGE RATE | | 41.25% |

is or will be paid to him or for his account or to another person on his behalf.

2) All charges, individually itemized, which are included in the amount of credit extended but which are not part of the finance charge.

3) The total amount to be financed . . . .

Regulation 12 C.F.R. § 226.8(d)(1) (1969) expresses these disclosure requirements thus:

> The amount of credit . . . which will be paid to the customer or for his account or to another person on his behalf, including all charges, individually itemized, which are included in the amount of credit extended but which are not part of the finance charge, using the term "amount financed."

The *Pollock* court relied on paragraph (1) of Section 1639(a). It held that this portion of the Act mandates that borrowers be told the basic amount of the loan proceeds they will have to use, *i. e.*, the sum paid to them or to their account or to another on their behalf. Unlike Pollock, McGowan was told the "amount of credit of which the [borrower] will have the actual use, or which is or will be paid to him or for his account or to another person on his behalf." This information was disclosed as a single lump sum under the heading "Net Proceeds to Borrower." McGowan's complaint is that the amounts of the two loan payoffs included in this single net proceeds sum were not itemized on the disclosure sheet in the same manner "charges" described in paragraph (2) of Section 1639(a) must be individually tallied. Thus, McGowan's case presents a question *Pollack* did not squarely decide: Does the statute and its implementing regulation require individual disclosure of every separate disbursement which is to be made from the net amount generated by the loan for the borrower's use or benefit?

■ Examining the regulation alone without consulting the separation of the three requirements in subsection (a) of Sec-

tion 1639 could produce an erroneous answer. The regulatory requirement for itemization might reasonably be read as applying to both of the disclosures to be made for charges that are not part of the finance charge. As suggested by *Pollock*, however, this interpretation of the regulatory language would be improper. The statute is the foundation for the regulation and its *raison d' etre*, and the two must be read together. When they are, the proper construction becomes clear. The itemization required by paragraph (2) of Section 1639(a) and echoed in the regulation applies only to charges made by the lender for costs incurred in connection with the making of the loan, such as insurance and recording fees, which are not included in the finance charge. Other component parts of the amount financed, *e. g.*, sums applied to retire outstanding loan balances, need only be disclosed within the total paragraph (1) sum, to be paid out to the borrower or for his use to others, and need not be individually itemized. Accordingly, the district court erred in predicating lender liability on this ground.

### B. *The Broker's Fee as a Prepaid Finance Charge*

The "Prepaid Finance Charge" debate has been laid to rest by our decision on rehearing in *Jones v. Community Loan & Investment Corp.*, 544 F.2d 1228, *aff'g in part and rev'g in part*, 526 F.2d 642 (5 Cir. 1976). In that case, three different Georgia creditors had excluded their loan fee from the "Amount Financed" and included it as part of the "Finance Charge" when they made their loans to three different borrowers. For all practical purposes, the Georgia loan fee and the broker's fee in the instant transaction are the same. All three Georgia creditors invoked 15 U.S.C. § 1640(f) [2] as insulating them from liability and argued that they had relied upon the Federal Reserve Board's interpretative amendment, 12 C.F.R. § 226.819 (1973), in including their

---

**2.** 15 U.S.C. § 1640(f) provides:

No provision of this section or section 1611 of this title imposing any liability shall apply

to any act done or omitted in good faith in conformity with any rule, regulation, or interpretation thereof by the Board, notwithstand-

loan fees as a part of the "Finance Charge." We found that any Georgia lender who could establish that he omitted labeling a Georgia loan fee as a "Prepaid Finance Charge" in good faith in conformity with 12 C.F.R. § 226.819 (1973) would be exculpated from liability under 15 U.S.C. § 1640(f).

■ Two of the lenders in *Jones*, however, executed their loans prior to the date the Board issued 12 C.F.R. § 226.819 (1969). Since these two lenders could not have relied upon the amendatory regulation at the time their loans were transacted, we held that they were barred from reliance upon Section 1640(f)'s exculpatory language. This part of the ruling in *Jones* controls the result here. The defendants' loan to McGowan was made on June 8, 1973, prior to the date on which the Board issued 12 C.F.R. § 226.819 (1969). Therefore, they are not protected under Section 1640(f) by the amendatory regulation. Their failure to include the broker's fee as a part of the "Prepaid Finance Charge" renders them liable under 15 U.S.C. § 1640. *Jones v. Community Loan Investment Corp., supra.*

### C. *Attorneys' Fees*

15 U.S.C. § 1640(a)(3) provides that in any successful action to enforce liability under the Truth-in-Lending Act, the defendant is liable for the plaintiff's "reasonable attorney's fees as determined by the court." In response to plaintiff's motion to award attorney's fees of $912, plus $54 in travel expense, the district court noted that because plaintiff's attorney had been successful "in only one minor charge," the court was unwilling to allow the full amount claimed and reduced the fee to $228 but did allow the travel expense sought of $54.

■ The Congressional goals underlying the Truth-in-Lending Act include the creation of a system of private attorneys general to aid in effective enforcement of the Act. *Sosa v. Fite*, 498 F.2d 114, 121 (5th Cir. 1974); *Thomas v. Myers-Dickson*

*Furniture Co.*, 479 F.2d 740, 748 (5th Cir. 1973). The reduction of an award of attorney's fees from the amount sought solely because the plaintiff was successful on only one of the several charges would be inconsistent with the Congressional policy of implementing enforcement of the Truth-in-Lending Act. *See Sellers v. Wollman*, 510 F.2d 119 (5th Cir. 1975). The attorney's fees award as reduced by the court below is vacated and the case is remanded to the district court with directions to determine the reasonable amount of attorney's fees to which the plaintiff's attorney is entitled. Our action here is not meant to intimate that any particular fee would be a reasonable fee. The amount of the fee should be set in accordance with the same principles that would govern the assessment of fees in general. *See Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). Since plaintiff prevailed on this appeal, the district court should also award additional attorney's fees to compensate him for this service. *Sosa v. Fite, supra.*

AFFIRMED IN PART and REVERSED IN PART.

---

ing that after such act or omission has occurred, such rule, regulation, or interpretation is amended, rescinded, or determined by

judicial or other authority to be invalid for any reason.