Kenneth M. HENSON, Plaintiff-Appellant-Cross Appellee,

v.

COLUMBUS BANK AND TRUST COMPANY, Defendant-Appellee-Cross Appellant.

No. 79–1260.

United States Court of Appeals, Fifth Circuit.

Unit B

July 20, 1981.

Kenneth M. Henson, Sr., Columbus, Ga., H. Holcombe Perry, Albany, Ga., Tom W. Daniel, Perry, Ga., for plaintiff-appellant-cross appellee.

W. M. Page, Columbus, Ga., W. Rhett Tanner, Atlanta, Ga., for defendant-appellee-cross appellant.

Before TJOFLAT, VANCE and FRANK M. JOHNSON, Jr., Circuit Judges.

PER CURIAM:

This is an appeal and cross-appeal from a final judgment in a Truth-In-Lending[1] ("TIL") case. In all, five issues are raised: (1) whether a Georgia court decision was res judicata as to plaintiff's TIL claim; (2) whether the district court abused its discretion by declining to exercise pendent jurisdiction over claims based on Georgia usury law; (3) whether the district court misinstructed the jury concerning the meaning of commercial credit; (4) whether the district court erred in finding that there were eleven rather than fifty-five separate TIL transactions; and (5) whether the district court abused its discretion in awarding attorneys' fees without holding a hearing. We conclude that the district court erred by not exercising pendent jurisdiction and by failing to hold a hearing on the attorneys' fee issue. We otherwise affirm the district court's judgment.

I

*The Facts*

Kenneth Henson, plaintiff below, borrowed money from the Columbus Bank and Trust Company (Bank) on eleven occasions between 1968 and 1971. All of the notes were secured by a security deed on Henson's residence; some were also secured by Henson's stock holdings.

The Bank set the interest on each demand note at ½ point above its then current prime interest rate. Whenever the Bank's

---

**1.** *See* Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq.* (1976).

prime rate changed, the interest rate on Henson's notes was altered accordingly. The Bank notified Henson by mail each time the rate changed.

Henson based his TIL claim on five events. First, on July 5, 1974, the Bank sent Henson a letter, relating to eleven loans, informing him that "effective today we are increasing the rate on your demand loans by ½ of 1%." Record, vol. I, at 29. This letter disclosed neither the new nor the old finance charge and failed to include a description of the collateral securing the loans, as required by 15 U.S.C. § 1639(a)(4), (5) and (8) (1976). The other four TIL events were four quarterly billings of each of the eleven loans. (Hence, there are potentially 55 TIL Act violations.) The billings failed to disclose either the current interest rate or the amount of time Henson had to make payment without suffering penalty charges, as required by 15 U.S.C. § 1639(a)(6) and (7) (1976).

On May 30, 1975, Henson paid the Bank the principal and accumulated interest on the demand notes. Then, on June 25, 1975, he brought this TIL action. Henson's complaint contained five counts; only two are relevant to this appeal. In the first count, Henson alleged that the Bank violated the TIL Act by failing to make the required disclosures in both the July 5, 1974 letter increasing the interest on his notes, and in the four quarterly billings for interest. In the second count, Henson alleged that the Bank's interest rate exceeded the maximum permitted under Georgia's usury law. The district court declined to exercise pendent jurisdiction over the state-law claim and on January 10, 1977, dismissed it without prejudice.

Thereafter, Henson brought suit on these loan transactions in the Muscogee County, Georgia, Superior Court. The parties disagree concerning whether Henson's complaint presented the same TIL claim then pending in the district court; they do agree that the complaint presented the state-law usury claim previously dismissed by the district court. The Bank moved for summary dismissal on several grounds; only one, that

the statute of limitations had run, is relevant to this appeal. The Superior Court ruled in favor of the Bank and dismissed the action. Record, vol. II, at 628.

Henson appealed this decision to the Georgia Court of Appeals. The Court of Appeals affirmed the Superior Court, holding that "the trial court did not err in dismissing Counts I [the TIL Act claim] and III as we agree that each was barred by the applicable statute of limitations." *Henson v. Columbus Bank & Trust Co.*, 144 Ga.App. 80, 85, 240 S.E.2d 284, 288 (1977).

Following this appeal, Henson returned to federal district court and moved the court to reconsider its dismissal of his state-law usury claim. According to Henson, the district court should not have dismissed this claim when it did because the statute of limitations had run and therefore barred its subsequent litigation in the Georgia courts. Under these circumstances, Henson argued, the court was duty-bound to exercise pendent jurisdiction. The district court denied the motion, however, without stating its reasons.

The case proceeded to trial. The Bank conceded it had failed to make adequate TIL disclosures in its communications with Henson, which left two contested issues: first, whether Henson's loans were commercial loans, and thus exempt from TIL Act coverage; and second, if not exempt, whether the court should assess penalties for each of fifty-five inadequate communications the Bank had with Henson, see *supra* at 2, or, rather, assess penalties for each of the eleven loan transactions. The district court determined that there were, as a matter of law, only eleven actionable transactions. The issue of whether the loans were commercial loans was to be submitted to the jury.

At trial, Henson testified concerning the loans and both Henson and the Bank introduced voluminous documentary evidence. When both sides had concluded their presentations, the district judge submitted the issue of whether the loans were commercial to the jury. The court instructed the jury that the plaintiff had the burden of proving

that "the particular loan that you are considering at the moment represented credit which was extended to him ... primarily for personal, family household or agricultural purposes and not primarily for business, commercial or other purposes." Record, vol. 6 at 10. The jury found that the plaintiff met his burden on only seven of the eleven loans. Because the TIL Act specifies that the penalty for failing to make required disclosures is twice the finance charge, up to a maximum of $1,000 per transaction, and because the finance charge on each loan exceeded $500, the district court assessed seven $1,000 penalties.

Henson's victory was costly. In the course of the litigation, Henson engaged two law firms and, counting himself, six attorneys. These six attorneys petitioned the court for attorneys' fees. They submitted affidavits showing that almost 1,000 hours had been spent on prosecuting the federal aspects of the case. At their requested $50 an hour, this would have yielded an award of approximately $50,000. The attorneys requested a hearing; the district court refused to grant one and set the fees, collectively, at $4,773. The court based this figure on its belief that the case could have been handled in 150 hours. At $50 an hour, this would yield an award of $7,500. The court then reduced this amount by 4/11, to take into account the four loans the jury found outside the coverage of the TIL Act.

Henson now appeals the district court's judgment. He contends that the district court should have exercised pendent jurisdiction over the state-law usury claim; that the court's instructions to the jury were erroneous and resulted in four loans being incorrectly characterized as commercial; that there were fifty-five rather than eleven actionable TIL transactions; and that the court should have held a hearing on attorneys' fees. The Bank cross-appeals, contending that the district court should have granted its motion for summary judgment because the favorable state-court decision was res judicata as to the TIL claims.

We think the district court erred in its refusal to grant Henson's motion for reconsideration on the pendent jurisdiction issue and also erred in refusing to hold a hearing on attorney's fees, and we remand the case for such a hearing. In all other respects, we affirm the judgment.

II

*Res Judicata*

The Bank contends on cross-appeal that the district court should have held the state-court judgment *res judicata* with respect to Henson's TIL claim. The Bank's theory is that Henson unsuccessfully litigated the TIL claim in the Georgia courts; the Georgia judgment, therefore, is a final disposition on the merits and is *res judicata* in federal court. Henson counters with two arguments: first, the TIL claim was not part of the cause litigated in the Georgia courts and, hence, the Georgia courts would not give preclusive effect to the prior decision in considering the TIL claim; and second, even if Georgia courts would give preclusive effect to the prior judgment, it would be based on the time bar of the applicable statute of limitations, which under established principles has no force in the courts of other jurisdictions.

We first consider Henson's theory that the TIL claim was not part of his state-court cause of action. A review of the state-court complaint, and of the Georgia Court of Appeals decision, however, makes clear that Henson's TIL claim was litigated in state court. The first count of the complaint, in pertinent part, states as follows:

CB&T [the Bank] violated the Truth in Lending Act in that said transmittal [the July 5, 1974, letter increasing the interest rate] constituted a new transaction and was not accompanied or preceded by the disclosures required by said Act.

. . . . .

CB&T further violated the Truth in Lending Act in that said periodic billings for interest were not accompanied or preceded by disclosures required by said Act.

Record, vol. 3, at 722. Henson claims that this language, clear as it may seem, does not demonstrate that his TIL claim was

litigated in state court because he did not specifically request relief based on his TIL allegations. The Bank counters that Henson prayed for any "relief as is deemed proper and just by this Court." See Record, volume 3 at 725. If this, alone, is not enough to demonstrate that the TIL claim was raised in state court, the Georgia Court of Appeals opinion clearly indicates that the TIL claim was raised by the complaint and dismissed by the trial court:

> Henson ... brought this suit in the Superior Court of Muscogee County containing the *same* counts as in the federal suit. . . .

*Henson v. Columbus Bank & Trust Co.*, 144 Ga.App. 80, 81, 240 S.E.2d 284, 286 (1977).

> In [Count] I ... of the [state-court] complaint, Henson alleged that CB&T violated the Truth in Lending Act. . . .

*Id.*, 144 Ga.App. at 83, 240 S.E.2d at 287.

> We conclude that the trial court did not err in dismissing [Count] I ... as we agree that [it] was barred by the applicable statute of limitations.

*Id.*, 144 Ga.App. at 85, 240 S.E.2d at 288. There is thus no merit to Henson's argument that his TIL claim was not litigated in state court.

We thus reach Henson's second contention, that the state court dismissal should not bar the federal suit because the dismissal was based solely on the applicable statute of limitations. Before we reach the merits of this contention, we must consider the Bank's position that the statute of limitations formed only part of the basis for the state-court dismissal. According to the Bank, the Georgia court also held that Henson's complaint failed to state a TIL claim on the merits.

The Bank's position is that the Muscogee County Superior Court's dismissal of Henson's lawsuit was on each ground urged by the defendant, see *supra* at 322, and that one such ground was Henson's failure to state an actionable TIL claim. An insurmountable obstacle to this position is that the Georgia Court of Appeals affirmed the judgment solely on the grounds of the statute of limitations: "the trial court did not err in dismissing [the TIL claim] as we agree [it] was barred by the applicable statute of limitations." *Henson*, 144 Ga.App. at 85, 240 S.E. at 288. In the face of this, the dismissal must be regarded as based only on the statute of limitations.[2] See *Restatement of Judgments* § 49, comment c at 196 (1942).

Henson's position is that a state-court dismissal on the basis of the statute of limitations bars only the state-court remedy and is not an adjudication on the merits of his TIL claim. In effect, Henson argues that the state decision signifies only that *its* courts may not be used to litigate an otherwise actionable TIL claim; it is not a decision on the merits and, therefore, res judicata does not operate as a bar to Henson's litigation of the claim in federal court.

Henson's position has long been accepted in the federal courts. *Jimenez v. Toledo*, 576 F.2d 402 (1st Cir. 1978); *See also Titus v. Wells Fargo Bank & Union Trust*, 134 F.2d 223 (5th Cir. 1943) (dismissal of diversity case on limitations grounds is without prejudice to bringing the action in another jurisdiction); *Stokke v. Southern Pacific Co.*, 169 F.2d 42 (10th Cir. 1948); *Warner v. Buffalo Drydock Co.*, 67 F.2d 540 (2d Cir. 1933), *cert. denied*, 291 U.S. 678, 54 S.Ct. 529, 78 L.Ed. 1066 (1934);[3] *Cummings*

---

2. The Bank argues that the following statement by the Court of Appeals indicates its affirmance on all grounds:

> "We have carefully examined each of the enumerations of error and the arguments in support thereof, and find no error in the dismissal of Henson's complaint."

*Henson*, 144 Ga.App. at 86, 240 S.E. at 289. Our reading of this statement is that the court found no error in the dismissal of the complaint. We cannot see how the quoted language can be expanded to mean that the court found each reason advanced for the dismissal to be meritorious, particularly since the court's opinion cites only the statute of limitations as a ground supporting dismissal of the TIL claim.

3. We cite the *Warner* decision because of the clarity with which it states the principle underlying Henson's position. Subsequent decisions, however, cast doubt on the continuing validity of *Warner* in the Second Circuit. See *Bertha Building Corp. v. National Theatres Corp.*, 248

*v. Cowan*, 390 F.Supp. 1251, 1255 (N.D.Miss. 1975). *See also 1B Moore's Federal Practice* ¶ 0.409[6] (2d ed. 1965). The Restatement of Judgments provides a clear statement of this principle:

> [I]f the plaintiff brings an action to enforce a claim in one State and the defendant sets up the defense that the action is barred by the Statute of Limitations in that State, the plaintiff is precluded from thereafter maintaining an action to enforce the claim in that State. He is not, however, precluded from maintaining an action to enforce the claim in another State if it is not barred by the Statute of Limitations in that State.

Restatement of Judgments § 49, comment a at 194–195 (1942). The Restatement position is sound, and is supported by the weight of authority. We therefore hold that the Georgia decision does not bar Henson from litigating his TIL claim in the federal district court.

### III

### *Pendent Jurisdiction*

As recounted above, Henson's federal complaint alleged a state-law claim over which he asked the court to exercise pendent jurisdiction. The district court initially declined jurisdiction. At the time, however, the court was unaware that the statute of limitations would prevent Henson from litigating his claims on the merits in state court. When the statute of limitations problem surfaced—after the Georgia courts ruled that Henson's claim was time-barred—Henson moved for reconsideration of the court's previous order declining pendent jurisdiction. The court, without explanation, denied Henson's motion. Henson contends that the court erred both in initially declining pendent jurisdiction and in denying the motion for reconsideration.

■ We need not decide whether the district court was correct in initially declining

pendent jurisdiction, since it is clear that the court should have granted Henson's motion for reconsideration. The basis for that motion was, of course, that Henson was time-barred from using the Georgia courts to litigate his claim. We have previously held that in such circumstances, a court should exercise pendent jurisdiction: "That a plaintiff's state law claims will be time-barred if dismissed is certainly a factor, if not a determinative factor, a district court should consider in deciding whether to maintain jurisdiction over pendent state claims . . . ." *Pharo v. Smith*, 625 F.2d 1226, 1227 (5th Cir. 1980). *See also O'Brien v. Continental Illinois National Bank and Trust Co.*, 593 F.2d 54, 63–65 (7th Cir. 1979). In the case before us, Henson's claims were time-barred, and we therefore conclude the district court should have granted Henson's motion for reconsideration.

### IV

### *Jury Instructions on Commercial Credit*

Henson alleges that the Bank violated 15 U.S.C. § 1639 (1976), which requires that "[a]ny creditor making a consumer loan or otherwise extending consumer credit in a [covered] transaction . . . shall disclose [certain enumerated terms of the loan]." In this context, the "adjective 'consumer' . . . characterizes the transaction as one in which the party to whom credit is offered or extended is a natural person, and the money . . . which [is] the subject of the transaction [is] primarily for personal, family, household, or agricultural purposes." 15 U.S.C. § 1602(h) (1976). In addition to this definition of "consumer transaction," the Act specifically exempts from its provisions, "extensions of credit for business or commercial purposes." 15 U.S.C. § 1603(*l*) (1976). Thus, it is clear that any of the Bank's eleven extensions of credit to Henson that were for business or commercial purposes are not covered by the Act.

F.2d 833, 840 (2d Cir. 1957), *cert. denied*, 356 U.S. 936, 78 S.Ct. 777, 2 L.Ed.2d 811 (1958); *Murphy v. A/S Sobral*, 187 F.Supp. 163 (S.D.N.Y.1960). In his treatise, Professor Moore labels these decisions "unfortunate," *1B Moore's Fed-*

*eral Practice* ¶ 0.409[6] at 1035–36 n.13 (2d ed. 1965), and notes that "the carefully considered and overwhelming weight of authority is in accord with the *Warner* rule." *Id.* at 1035–36.

Whether the extensions of credit were for business purposes was the single issue the court submitted to the jury.

The court presented this issue to the jury by asking whether Henson

establish[ed] to your satisfaction by a preponderance of the evidence that [each] loan . . . was primarily for personal, family, household or agricultural purposes and not primarily for business, commercial or other purposes. In other words, the burden is on Henson to demonstrate that the loan comes within the provisions of the act. And unless [Henson] has carried this burden, to your satisfaction, you could not find in his favor with regard to the loan which you have under consideration at the moment.

Record, volume 6 at 10. The jury found that Henson met this burden on only seven of the loans. Accordingly, the court did not assess penalties relating to the other four loans.

Henson contends that the court misinstructed the jury in two respects. First, he argues that the TIL commercial loan exemption is an affirmative defense on which the Bank had the burden of proof. Second, Henson objects to the following passage from the court's instructions:

[C]redit *which is used* or a loan which is made for the purpose of the funds being used for purely investment purposes, or to enable a person to acquire or retain investment property *of any nature*, would not be credit which was extended for personal, family, household or agricultural purposes, but that would be credit which should properly be regarded as being for business or commercial purposes.

Record, vol. 6 at 13 (emphasis added). Henson believes that this instruction was improper because it (1) instructed the jury to find that the loan was commercial if it was *used* for investment purposes; and (2) did not limit the term, "investment property," to a business of the debtor.

■ We need not reach either of Henson's arguments. Even assuming that the instructions do not accurately describe the law, the district court should have directed a verdict for the Bank on the four loans the jury found to be commercial; any error in the instructions, including those allocating the burden of proof, was therefore harmless. This is because Henson's uncontradicted testimony established as a matter of law that the loans were extended to permit him to lend money to and invest in Ralston Corporation, and that Ralston Corporation was a business of Henson's.

We turn first to Henson's contention that even if the Bank extended credit to him to allow him to loan or invest in Ralston Corporation, the loan would still be a consumer loan. Henson cites a Federal Reserve Board letter for the proposition that credit extended to allow a borrower to make a loan or investment "in the nature of a personal investment, [is a consumer loan because] the purpose for which [the borrower] obtained the funds [is] not a business or commercial purpose . . . ." Federal Reserve Board Truth in Lending Section Letter No. 650 (December 1, 1972), II *Truth-In-Lending Manual* D249 (4th ed. 1976). Assuming that the view expressed in the letter is correct, Henson would be helped only if his loans and investments to Ralston were "in the nature of a personal investment" within the meaning of the Board's letter.

If the Federal Reserve Board letter means that a loan extended to a borrower to invest in, or make loans to, one of his businesses is exempt from the Act, the business-purpose exemption would be reduced to a nullity. A debtor's use of a loan to assist a business of *his* cannot be an investment in the sense intended by the Federal Reserve Board. Perhaps the Board was referring to investments in the sense of a "scheme involv[ing] an investment of money in a common enterprise with profits to come solely from the efforts of others." *SEC v. W. J. Howey Co.*, 328 U.S. 293, 301, 66 S.Ct. 1100, 1104, 90 L.Ed. 1244 (1946). The facts underpinning the Board's letter support this interpretation. As described there, a commercial lender extended credit to an individual who, in turn, intended to lend the proceeds to a friend for use in the friend's business. In holding that the loan

was not commercial, the letter implicitly recognizes that if the commercial lender dealt with the friend, the loan would have been for a commercial or business purpose. We must therefore consider whether Ralston Corporation was a business of Henson's.

Uncontradicted record evidence demonstrates that Henson held twenty percent of Ralston's stock, was a Ralston director, and a guarantor of Ralston's debts, as well as being the company's corporate secretary and legal counsel. Record, vol. 5, at 82, 83, 87. Henson argued that his involvement in Ralston was irrelevant because his business was his law practice and not Ralston. The TIL Act, however, "does not distinguish between full-time and part-time business-es." *Sapenter v. Dreyco, Inc.*, 326 F.Supp. 871 (E.D.La.), *aff'd* 450 F.2d 941 (5th Cir. 1971), *cert. denied*, 406 U.S. 920, 92 S.Ct. 1775, 32 L.Ed.2d 120 (1972). The positions that Henson held in Ralston demonstrate active participation in the conduct of Ralston's affairs. Absent even a shred of evidence that his role was that of a passive investor, we hold as a matter of law that Ralston was Henson's business.

Henson next contends that the court erroneously instructed the jury to find that the loans were commercial if it found that Henson subsequently invested the proceeds in Ralston. According to Henson, the jury's focus should have been confined to evidence of the Bank's purpose in extending credit at the time the credit was extended.[4] Assuming that Henson is correct, we must, nevertheless, uphold the jury's verdict since Henson's uncontradicted testimony demonstrates, again as a matter of law, that the Bank extended credit to Henson so that Ralston could meet its debt obligations to the Bank. As Henson explained at trial:

The bank cut off the credit of the Ralston Corporation and started a policy, they would make a personal loan to me for me to loan to the corporation, which the corporation used either to operate or to pay back on the guarantee, on the three million one hundred seventy-four thousand dollars. In those instances it had the effect of reducing the amount that I was liable to the bank on the guarantee.

Record, vol. 5 at 62. Henson's testimony concerning each of the four loans is reproduced below.

[March 11, 1970 loan] I was on the personal guarantee to CB&T .... I was at the bank's mercy. Whatever the bank requested me to do I pretty well had to do.... The stockholders were obligated on a guarantee of three million dollars and it was either borrow the thirty-six thousand from the bank and put in there or let the Corporation go under. Under those circumstances I borrowed the money and the bank advised me that they would loan me the money personally, but they would not make any further loans to the Ralston Corporation.

*Id.*, at 81–82.

The purpose of making the loan was to alleviate myself of the pressure of a ... guarantee which I signed at the bank and which they held over my head, and the bank was insisting that something be done about the Ralston [Corporation] and it was under those circumstances that the stockholders got together and it was under those circumstances that I borrowed the money and loaned it.

*Id.*, at 83.

[November 10, 1970 loan] [T]he bank was requiring some payments from the Ralston [Corporation] to Columbus Bank and I was liable to the bank on a guarantee and they would loan me the money personally but they would not loan it to the Corporation. I loaned it to the Ralston [Corporation] and then the Ralston [Corporation] paid the bank.

*Id.*, at 65–66.

[February 11, 1971 loan] Q And, the purpose of the loan from the bank was to enable you to make a loan to the Ralston Corporation, was it not?

---

**4.** Henson's argument ignores the possibility that the use of loan proceeds may be probative of the reasons for a lender's extension of credit.

A I made a loan to the Ralston [Corporation]—I wrote the check to the Ralston [Corporation] on February 12, 1971, lending them [the amount the Bank loaned to me.]

. . . . .

Q That was the purpose of the loan you made with the bank?

A That was the motivation for it, yes.

*Id.*, at 85–86.

[July 23, 1971 loan] Q [T]he purpose of the loan . . . was still to enable you to make the loan to the Ralston Corporation?

A That was my feeling.

*Id.*, at 86.

This uncontradicted testimony shows that the Bank instituted a policy by which it would not loan Ralston money but would loan Henson money to lend or invest in Ralston. The evidence also established, again through Henson's uncontradicted testimony, that the Bank pressured Henson to take out the loans to support Ralston, and that he provided Ralston with the full amount of the proceeds from these loans. In these circumstances, we conclude that the Bank's motion for a directed verdict that the four extensions of credit were commercial should have been granted. Any error the trial court may have committed in instructing the jury thereon was, therefore, harmless.

V

*Penalties*

Henson contends that because there were fifty-five instances of nondisclosure, the district court should have imposed fifty-five penalties.[5] The facts show, however, that these nondisclosures related to only eleven loans.

The TIL Act specifies that

The multiple failure to disclose to any person *any information* required under

this part or part D or E of this subchapter to be disclosed in connection with a single account under an open end consumer credit plan, other single consumer credit sale, consumer loan, consumer lease, or other extension of consumer credit, shall entitle the person to a single recovery under this section but continued failure to disclose after a recovery has been granted shall give rise to rights to additional recoveries.

15 U.S.C. § 1640(g) (emphasis supplied) (1976). This plain language belies Henson's contention. Henson, however, argues that section 1640(g) does not apply in this case. His argument begins with the statutory language stating that multiple penalties are not to be assessed for "multiple failures to disclose . . . any information required under [the Act]." Henson reads this language as a single-penalty limitation in cases of multiple failure to disclose the same single item of information. Since the Bank's communications to Henson failed to disclose *different* items of information,[6] section 1640(g) should not apply.

Henson's interpretation, aside from the tortuous strain it imposes on the statutory language, is incorrect. Section 1640(g)'s apparent purpose is to limit penalties assessed with respect to a single account, *Turner v. Firestone Tire & Rubber Co.*, 537 F.2d 1296, 1299 (5th Cir. 1976). This purpose would be thwarted if Henson is correct that minor differences in what should have been disclosed permit assessment of multiple penalties. Moreover, Henson's position would create anomalous situations. For example, assume two billings pertaining to one loan, each failing to disclose the interest rate and the collateral on a loan. In such a case, Henson's theory would permit only one recovery. But now assume the first billing disclosed the interest rate and not the collateral, and the second billing the collateral but not the interest rate. Here, Henson's theory would

---

**5.** Our holding that only seven of the loans represented extensions of consumer credit means that there would have been only thirty-five instances of TIL Act nondisclosure.

**6.** The TIL Act required the various communications to disclose different rates of interest and different dates on which penalty charges would be assessed for nonpayment.

permit the debtor two recoveries, even though the debtor has received greater disclosure than the debtor in the first hypothetical. This is inappropriate, and we thus conclude that Henson's theory is erroneous.

Henson's next argument is based on the opinion in *Dennis v. Handley*, 453 F.Supp. 833 (N.D.Ala.1978). That case involved a pawn contract that by its own terms could be *renewed* monthly by payment of interest. The district court held that "the present case involv[ed] a separate loan made upon each renewal," *Handley*, 453 F.Supp. at 835, and thus did not "involve . . . a single account payable in installments." *Id.* Even if *Handley* identifies a situation to which 15 U.S.C. § 1640(g) is inapplicable, Henson's argument is untenable. His payment of interest differs in effect from the pawnor's payment. If the pawnor did not make the interest payment, under the terms of the pawn contract, the pawnee took title to the pledged property and the "loan" transaction was thereby concluded. By his payment of interest, however, the pawnor prevented this termination. In Henson's situation, late payment does not conclude the loan. Thus each payment in *Handley* created a new loan, while each of Henson's payments was merely part of a single loan transaction.

For the reasons stated, we hold that section 1640(g) limits the assessable penalties to one per loan.

### VI

*Attorney's Fees*

Henson's attorneys petitioned the district court for attorneys' fees pursuant to 15 U.S.C. § 1640(a)(3) (1976). In support of their petitions, the attorneys submitted affidavits stating the number of hours they claimed to have devoted to prosecuting the TIL claim.[7] Each attorney pegged his hourly fee at $50.00. In all, a total of almost 1,000 hours were claimed. With expenses, the attorneys requested approximately $50,000. When the Bank objected to the amount of this request, Henson's

attorneys sought an evidentiary hearing. The court declined to hold one and awarded the sum of $4,773. The reason for setting the fee award at that level was explained by the court:

> The affidavits indicate that the attorneys as a group claim 979 hours at an average of approximately $50 per hour. All counsel involved are highly competent and the hourly charge appears to be appropriate, but with regard to total number of hours claimed the Court feels compelled to make these observations: . . . a considerable part of the time spent by counsel must have been either duplicative or counterproductive, and with six lawyers involved in handling a case it is not difficult to understand how this could be true.
>
> The Court has had close contact with this matter since its inception and, having given consideration to the affidavits, the nature of the claims, the discovery, the pre-trial motions and briefs and the jury presentation, has concluded that prosecution of all of the Truth-in-Lending claims should not have reasonably required more than 150 hours of full time attention by counsel. If the Plaintiff had prevailed on all claims this would indicate an attorney's fee award of $7,500, but since he was "successful" on only 7 of the 11 claims, the figure must be reduced to $4,773 (this being ⁷⁄₁₁ of $7,500), and the Court makes an attorney's fee award in that amount.

Record, vol. 4 at 1135–1136.

 Henson claims that the court erred in three ways. First, fees should have been set in accordance with the criteria identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–719 (5th Cir. 1974). Second, the court should have held an evidentiary hearing. And third, a reduction in hours because the attorneys prevailed on only seven of the loans was inappropriate. *See McGowan v. Credit Center of North Jackson, Inc.*, 546 F.2d 73 (5th Cir. 1977). Henson is correct on all grounds.

---

**7.** The attorneys omitted hours devoted to the state-law claim.

In *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), we set forth the standards to govern fee requests in Title VII cases. These standards, are not, however, limited to Title VII cases, but "govern the assessment of fees in general." *McGowan*, 546 F.2d at 77.[8] The district court did not refer to the *Johnson* criteria in explaining the fee award. Since a court abuses its discretion when it fails to consider these criteria, *Johnson*, 488 F.2d at 720, we must remand for further findings. Moreover, the presence of apparent factual disputes concerning the amount of time and duplicative effort spent by Henson's *six* attorneys required the court to hold an evidentiary hearing to apply the *Johnson* criteria.[9] Finally, to the extent "[t]he reduction of [Henson's] attorney's fees from the amount sought [was] solely because the plaintiff was successful on only [seven] of the [eleven] charges [, the reduction] would be inconsistent with the Congressional policy of implementing enforcement of the Truth-In-Lending Act." *McGowan*, 546 F.2d at 77. Therefore, we remand the case for the limited purposes of determining reasonable attorneys' fees. We intimate no view as to the amount that should be awarded.

AFFIRMED in part, VACATED and REMANDED in part.

TJOFLAT, Circuit Judge, concurring in part, dissenting in part:

I concur in all but section III of the majority's per curiam opinion. In section III, the majority holds that the district court abused its discretion in declining to exercise pendent jurisdiction over Henson's state-law claim. I am unable to agree.

The district court had two occasions in which to consider exercising pendent jurisdiction over the state-law claims. On the first occasion, the court was unaware that a time-bar awaited Henson in the Georgia courts. Lacking this knowledge, the district court, in the exercise of its discretion,

see *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725–726, 86 S.Ct. 1130, 1138–1139, 16 L.Ed.2d 218 (1966), declined to exercise pendent jurisdiction. The district court offered two reasons for its declination: the non-federal claim involved difficult issues of Georgia law whose resolution was best left to the Georgia courts; and the state-law claim would require production of confusing evidence that was irrelevant to the Truth-In-Lending claims. Record, vol. II, at 91–93. Certainly, the district court did not, on the information then before it, abuse its discretion in declining jurisdiction.

Following the district court's dismissal of his state-law claims, Henson took those claims to the Georgia courts. The Georgia courts, however, held that they could not entertain them because the relevant Georgia statute of limitations had run. Henson then returned to the district court and moved the court, in light of the Georgia time-bar, to reconsider its dismissal of the pendent claims. The district court denied Henson's motion. On appeal, the majority reverses on the basis of *Pharo v. Smith*, 625 F.2d 1226 (5th Cir. 1980). In my view, *Pharo* does not mandate reversal. Rather, it requires us to affirm the district court on the pendent jurisdiction issue if it acted within its discretion, which I conclude it did.

In *Pharo v. Smith*, we held that a time-bar to a plaintiff's pendent state-law claims "is certainly a factor, if not a determinative factor, a district court should consider in deciding whether to maintain jurisdiction over pendent state claims...." 625 F.2d at 1227. The suggestion in *Pharo* that the time-bar may be a determinative factor in the district court's decision is, at most, dictum. In the case at bar, I would hold that the district court acted within its discretion in not giving the time bar factor determinative weight, since Henson, rather than timely calling the problem to the district court's

---

**8.** *McGowan* was itself a TIL Act case.

**9.** The *Johnson* criteria require consideration of the lawyers' hours and the possibility of duplication of effort. 488 F.2d at 717.

attention,[1] actually litigated his claim in state court, subjecting the Bank to needless expense and inconvenience. Given this, I think the district court acted well within its discretion in denying the motion. Therefore, I must respectfully dissent.

1. Henson argued that he reasonably believed the Georgia renewal statute, see Ga.Code Ann. § 3–808, tolled the statute of limitations while the state-law claim was pending in federal court, and he thus had no reason to call the limitations problem to the district court's attention. Henson's position would be appealing if his belief were in fact reasonable. His belief, however, was not reasonable, as there is a long line of Georgia cases holding to the contrary. *See Nevels v. Detroiter Mobile Homes*, 124 Ga. App. 112, 183 S.E.2d 77 (1971); *Webb v. Southern Cotton Oil Co.*, 131 Ga. 682, 63 S.E. 135 (1908); *Constitution Publishing Co. v. DeLaughter*, 95 Ga. 17, 21 S.E. 1000 (1894).