# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-10952

United States Court of Appeals
Fifth Circuit

**FILED**
January 11, 2019

Lyle W. Cayce
Clerk

PETRINA L. THOMPSON,

Plaintiff–Appellant,

v.

DALLAS CITY ATTORNEY'S OFFICE,

Defendant–Appellee.

Appeal from the United States District Court
for the Northern District of Texas

Before JOLLY, ELROD, and WILLETT, Circuit Judges.

DON R. WILLETT, Circuit Judge:

On the surface, this workplace-discrimination appeal augurs a clash between our rule of orderliness and rules of res judicata. Specifically, are we bound by a 1981 panel decision (that would allow the suit)[1] or by other preclusion precedent (that would bar it)?[2]

There is no clash. Our decision in *Henson v. Columbus Bank & Trust Co.* (letting a plaintiff litigate in federal court a claim previously dismissed in state court) is not binding—not now and not the day it issued—as it contravened preexisting full faith and credit precedent.[3] The rule of orderliness may be

---

[1] *Henson v. Columbus Bank & Trust Co.*, 651 F.2d 320 (5th Cir. 1981).

[2] *See, e.g.*, *Kremer v. Chem. Const. Corp.*, 456 U.S. 461 (1982).

[3] *See, e.g.*, *Allen v. McCurry*, 449 U.S. 90 (1980).

No. 17-10952

"binding as the law of the Medes and Persians which altereth not,"[4] but the United States Supreme Court, being supreme, makes all things mutable, even "our Holy Rule."[5]

Orderliness as a judicial goal commands adherence to Supreme Court precedent—particularly precedent about orderliness—not to circuit decisions disregarding that precedent. *Henson* was a one-off that was swiftly cast off. Indeed, the High Court months later reaffirmed its binding res judicata rule, one we have followed consistently ever since, paying *Henson* no mind.

Admittedly, identifying when a panel decision has morphed from nominally narrowed to no-doubt-about-it negated can be vexing at times. But not this time. *Henson* was never good law, and no precedent, neither the Supreme Court's nor ours, has ever treated it as such.

All to say, on-point res judicata precedent bars this suit. We AFFIRM.

I

Thompson, formerly a lawyer in the Dallas City Attorney's Office, claims she suffered workplace harassment, retaliation, and discrimination because of her race, color, sex, or age. She sued in both state court (raising only state claims) and federal court (raising only federal claims). Both suits arose from the same operative facts.

While her federal suit was pending, the state court ruled that her state suit was time-barred. So the City argued that this limitations dismissal in state court was res judicata in federal court. The district court agreed and dismissed, ruling that Texas preclusion law barred Thompson's federal suit.

On appeal, Thompson presents two arguments—both unavailing:

---

[4] *Steve D. Thompson Trucking, Inc. v. Dorsey Trailers, Inc.*, 880 F.2d 818, 820 (5th Cir. 1989) (Brown, J., dissenting) (referencing *Daniel* 6:12).

[5] *Id.*

No. 17-10952

1. The district court incorrectly gave res judicata effect to the state-court judgment because it was not a judgment on the merits.[6]

2. The district court denied her due process because the City did not assert res judicata in its original motion to dismiss. (The res judicata argument appeared for the first time in the City's reply brief.)

II

We first dispose of Thompson's res judicata argument.

A

Thompson argues that because the state court's summary judgment was based on limitations, it was not a final judgment on the merits. Citing our 1981 *Henson* decision, Thompson says the state-court dismissal lacks preclusive effect.

*Henson* considered whether a federal district court was correct that res judicata barred the plaintiff's claims after a Georgia state court determined that related claims were time-barred.[7] The panel held that "a state-court dismissal on the basis of the statute of limitations bars only the state-court remedy and is not an adjudication on the merits," adding, "res judicata does not operate as a bar to [plaintiff's] litigation of the claim in federal court."[8] Put simply, *Henson* declined to give a Georgia state court decision the res judicata effect that Georgia courts would give it. Indeed, the panel did not discuss Georgia res judicata law at all.[9]

*Henson* is factually analogous but legally anomalous. From the get-go, *Henson* was at odds with pre-*Henson* Supreme Court precedent; it is at odds

---

[6] Thompson does not argue that the state-court judgment failed to meet any other res judicata requirements.

[7] *See Henson*, 651 F.2d at 323–25.

[8] *Id.* at 324.

[9] *See id.* at 323–25.

with post-*Henson* Supreme Court precedent; and it is at odds with nearly four decades of Fifth Circuit precedent.

1

Let's start with why *Henson* was misguided from the outset. According to the Full Faith and Credit Act, one of Congress's first acts, "judicial proceedings . . . shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken."[10] The Supreme Court put it plainly in *Allen v. McCurry*, which predates *Henson*:

> [T]hough the federal courts may look to the common law or to the policies supporting res judicata and collateral estoppel in assessing the preclusive effect of decisions of other federal courts, Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so . . . .[11]

*McCurry* resolved an unsettled question in this circuit: Does the preclusive effect of state-court judgments hinge on federal law or state law?[12] Answer: state law. Federal courts must step into the shoes of state courts and afford preclusive effect where state courts would do so.[13]

Oddly, *Henson* never discusses *McCurry*.[14] More oddly, *Henson* never even acknowledges *McCurry*. It would be one thing had *Henson* attempted to explain (however implausibly) why *McCurry* was inapt. But instead of

---

[10] 28 U.S.C. § 1738.

[11] 449 U.S. at 96 (internal citations omitted).

[12] *Compare Am. Mannex Corp. v. Rozands,* 462 F.2d 688 (5th Cir. 1972), *with Pye v. Dep't of Transp. of the State of Ga.,* 513 F.2d 290 (5th Cir. 1975); *see also Gresham Park Cmty. Org.,* 652 F.2d 1227, 1241 n.42 (5th Cir. 1981) (describing *McCurry* as resolving the conflict in this court's case law).

[13] *See McCurry* 449 U.S. at 94–105.

[14] *See Henson*, 651 F.2d at 323–25.

distinguishing *McCurry*, the panel disregarded it, declining to give preclusive effect to the Georgia state court's decision.[15]

Under our rule of orderliness, we may not overrule a prior panel decision absent an intervening change in the law, such as a statutory amendment or a decision from either the Supreme Court or our en banc court. And generally, we think of this Supreme Court or en banc authority as coming *after* the questionable panel decision. But this is not necessarily so. We have previously declined to follow a panel decision that couldn't be squared with prior Supreme Court precedent.[16] As *Henson* turns a blind eye to *McCurry*, *Henson*'s holding is irreconcilable, and thus inoperative, and has been since it was decided. We are bound to apply *McCurry* and our cases that abide *McCurry*, not *Henson*.[17]

2

Even assuming *Henson* retained marginal viability when it issued in 1981, any lingering force was quickly, and unquestionably, sapped. Just ten months after *Henson*, the Supreme Court in *Kremer v. Chemical Construction Corp.* reaffirmed *McCurry*'s res judicata rule: "It has long been established that [the Full Faith and Credit Act] does not allow federal courts to employ their own rules of res judicata in determining the effect of state judgments. Rather, it . . . commands a federal court to accept the rules chosen by the State from

---

[15] *Id.*

[16] *See, e.g., Wilson v. Taylor*, 658 F.2d 1021, 1034–35 (5th Cir. 1981). In *Wilson*, we faced a situation like this one, where a panel decision was inconsistent with earlier Supreme Court precedent. We concluded that, because the panel decision was issued after the Supreme Court decision, the panel's conflicting language was inoperative. The binding authority was the earlier Supreme Court decision, not the later panel decision that tracked circuit authority pre-dating the Supreme Court decision.

[17] To be clear, a panel's interpretation of a Supreme Court decision is binding on a subsequent panel even if the later panel disagrees with the earlier panel's interpretation. *See, e.g., United States v. Traxler*, 764 F.3d 486, 489 (5th Cir. 2014). We apply *McCurry* and not *Henson* because *Henson* made no claim, nor plausibly could have, that it was interpreting *McCurry*.

which the judgment is taken."[18] *Henson* and *Kremer* are irreconcilable. The latter spurned the former, and the estrangement is not mere tension, but rejection.

Moreover, our circuit has not treated *Henson* as good res judicata law for a generation. In the 38 years since *Henson*, we have repeatedly considered the res judicata effect due state court decisions. In each case, we followed the Full Faith and Credit Act, giving preclusive effect to state court decisions when that state would do so. In fact, just one year after *Henson*, we decided two preclusion cases—*Rollins v. Dwyer*[19] (issued one month before *Kremer*) and *E. D. Systems Corp. v. Southwestern Bell Telephone Co.*[20] (issued three months after *Kremer*)—that both employed the Supreme Court's Full Faith and Credit approach, not *Henson*'s out-of-step approach. Thompson urges us to heed our precedent, but our precedent pays no heed to *Henson*.

Tellingly, not one of our post-*Kremer* decisions on the res judicata effect of state-court judgments follows *Henson*. A "Citing References" check on Westlaw brings up only four Fifth Circuit cases that postdate *Kremer*. One of them, *Dorsey Trailers*, dealt with the preclusive effect one federal court ought to afford *another federal court's* grant of summary judgment.[21] The second, *Manges*, discusses *Henson*'s attorney-fee issue, not res judicata.[22] Another, *Riviere*, cites *Henson* once, and not for anything preclusion-related but for a Truth in Lending Act issue.[23] Finally, *Transource International* only mentions *Henson* offhandedly in the final footnote, explaining that a state-law claim's

---

[18] 456 U.S. at 481–82.

[19] 666 F.2d 141 (5th Cir. 1982).

[20] 674 F.2d 453 (5th Cir. 1982).

[21] *Dorsey Trailers*, 880 F.2d at 820 ("*Henson* is distinguishable . . . [and] *Shoup* is the better course to follow.").

[22] *Atl. Richfield Co. v. Manges*, 702 F.2d 85, 87 n.1 (5th Cir. 1983) (noting defendants cite *Henson*, but to no avail).

[23] *Riviere v. Banner Chevrolet, Inc.*, 184 F.3d 457, 462 (5th Cir. 1999).

time-barred status is a factor to be weighed when determining whether to exercise pendent jurisdiction.[24] This exhausts *Henson*'s post-*Kremer* "Citing References" and reveals no decisions that follow *Henson*'s one-off preclusion rule.

Nearly a dozen cases spanning a dozen years confirm that *Henson*'s reasoning and result have been discarded, not just discounted.[25] Not one of

---

[24] *Transource Int'l, Inc. v. Trinity Indus., Inc.*, 725 F.2d 274, 290 n.25 (5th Cir. 1984).

[25] *Sims v. City of Madisonville*, 894 F.3d 632, 644 (5th Cir. 2018) ("A federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984))); *Norris v. Hearst Tr.*, 500 F.3d 454, 460–61 (5th Cir. 2007) ("[T]he preclusive effect of prior state court proceedings on federal proceedings is determined by the treatment those state court proceedings would receive in the courts of the state—here, Texas—in which those prior proceedings were held."); *Procter & Gamble Co. v. Amway Corp.*, 376 F.3d 496, 500 (5th Cir. 2004) (citing *Jones v. Sheehan, Young & Culp, P.C.*, 82 F.3d 1334 (5th Cir. 1996) and *In re Hansler*, 988 F.2d 35 (5th Cir. 1993) as authoritative guides to the res judicata effect of a state court decision); *Ellis v. Amex Life Ins. Co.*, 211 F.3d 935, 938 (5th Cir. 2000) (recognizing and following the rule from *Hogue* and *Hansler* "deal[ing] with the preclusive effect of a Texas state court judgment"); *Jones*, 82 F.3d at 1338 ("When a federal court is asked to give res judicata effect to a state court judgment, the federal court must determine the preclusiveness of that state court judgment under the res judicata principles of the state from which the judgment originates." (citing *Prod. Supply Co. v. Fry Steel Inc.*, 74 F.3d 76, 78 (5th Cir. 1996) and *Hogue*, 939 F.2d at 1252)); *Prod. Supply Co.*, 74 F.3d at 78 ("A federal court asked to give res judicata effect to a state court judgment must apply the res judicata principles of the law of the state whose decision is set up as a bar to further litigation." (quoting *E. D. Sys. Corp.*, 674 F.2d at 457)); *In re Besing*, 981 F.2d 1488, 1494 (5th Cir. 1993) ("[U]nder the Full Faith and Credit Act, 28 U.S.C. § 1738, federal courts must give the Texas judgment the same preclusive effect it would have in a Texas court."); *Hansler*, 988 F.2d at 37 ("This court must give the Texas state court judgment the same preclusive effect that another Texas court would give it."); *In re Brady, Tex. Mun. Gas Corp.*, 936 F.2d 212, 217 (5th Cir. 1991) ("Section 1738 directs this federal court to give the Texas judgment the same effect as it would have in a Texas court."); *McWilliams v. McWilliams*, 804 F.2d 1400, 1402 (5th Cir. 1986) ("Under the full faith and credit clause of the Constitution and 28 U.S.C. § 1738, a federal court must give to a state court the same preclusive effect that a court of the state in which the judgment was rendered would give it." (citing *Kremer*, 456 U.S. at 461)); *see also Wilder Corp. of Del. v. Rural Cmty. Ins. Servs.*, 494 F. App'x 487, 489 (5th Cir. 2012) ("When asked to give preclusive effect to state court judgments, federal courts turn to the preclusion principles of the state whose decision is invoked as a bar to further litigation." (citing *Prod. Supply Co.*, 74 F.3d at 78)); *Lange v. City of Batesville*, 160 F. App'x 348, 351–52 (5th Cir. 2005) ("[W]e must accord preclusive effect to the [Mississippi] court's final judgment if the law of issue preclusion in Mississippi entitles the judgment to such effect in that state's courts.").

them so much as mentions *Henson* vis-à-vis preclusion because *Henson* was a nonprecedential outlier.[26]

We disagree with Thompson that our rule of orderliness obliges us to esteem *Henson* over contrary Supreme Court precedent such as *McCurry* and *Kremer* (not to mention our post-*Henson* cases that dutifully track binding precedent). Orderliness, rightly understood, compels deference, not defiance. And disregarding on-point precedent in favor of an aberrational decision flouting that precedent is the antithesis of orderliness. Such a higgledy-piggledy approach undermines, rather than underscores, the Rule of Law's foremost virtues: clarity, certainty, and consistency.

## B

Texas res judicata doctrine requires three things: (1) that the prior final judgment is on the merits; (2) that the parties in the two actions are the same; and (3) that the second action is based on claims that were raised—or could have been raised—in the first action.[27] Only the first element is seriously

---

[26] This too merits mention: *Henson*'s holding was anchored in section 49, comment (a) of the RESTATEMENT OF JUDGMENTS (AM. LAW INST. 1942), which then provided that a limitations-based dismissal in one state doesn't bar the same cause of action in another state with a more generous limitations period. First, and notably, the *Henson* court did not analyze whether Georgia state law would give preclusive effect to the state-court judgment. Second, unlike the situation mentioned in the Restatement comment, today's case is not about duplicative actions in state courts of different states. It's about the preclusive effect of a state-court judgment in *federal* court. Third, the relied-on comment from the 1942 Restatement was revised in the Second Restatement published in 1982, one year after *Henson*. The updated Restatement, unlike the 1942 version quoted in *Henson*, now reads, "Increasingly . . . judgments not passing directly on the substance of the claim have come to operate as a bar" for res judicata purposes. RESTATEMENT (SECOND) OF JUDGMENTS § 19 cmt. A (AM. LAW INST. 1982). Pertinently, comment G adds that summary judgment for the defendant generally bars another action by the plaintiff on the same claim. *Id.* cmt. G ("The rule stated in this Section is applicable to a case in which it is determined before trial that there is no genuine dispute with respect to any material fact and that, as a matter of law, the defendant is entitled to judgment.").

[27] *Sims*, 894 F.3d at 644.

disputed here: whether the state court's dismissal on limitations grounds was, under Texas law, a prior final decision on the merits. It was.

We held unequivocally in *Hogue v. Royse City* that a Texas state court's grant of summary judgment counts as a "final judgment" and carries the same preclusive effect in federal court that Texas state courts would afford it.[28] Relatedly, we held in *Hansler* that "a take-nothing judgment based on limitations is a final judgment on the merits under Texas law."[29] That remains black-letter law in the Lone Star State.[30] Consequently, res judicata bars Thompson's federal claims.

C

"For most Americans, Lady Justice lives in the halls of state courts."[31] Day by day, American justice is dispensed—overwhelmingly—in state, not federal, judiciaries.[32] As Justice Scalia remarked, state law (and state courts)

---

[28] *Hogue v. Royse City, Tex.*, 939 F.2d 1249, 1254, 1256 (5th Cir. 1991) ("The state court rendered a final judgment adverse to Hogue on this cause of action, and we must give effect to that judgment. . . . We conclude that a Texas court would find Hogue's federal suit to be barred under the doctrine of res judicata."). *Hogue* never mentions *Henson*.

[29] 988 F.2d at 37.

[30] *See, e.g.*, *Igal v. Brightstar Info. Tech. Grp., Inc.*, 250 S.W.3d 78, 90 (Tex. 2008) ("A court's dismissal of a claim because of a failure to file within the statute of limitations is accorded preclusive effect."), superseded on other grounds by statute, TEX. LAB. CODE § 61.051(c), as recognized in *Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 518 (Tex. 2012) (noting that the Payday Law's 180-day time limit for filing an administrative complaint is mandatory but not jurisdictional).

[31] John Schwartz, *Critics Say Budget Cuts for Courts Risk Rights*, N.Y. TIMES (Nov. 26, 2011), https://nyti.ms/2E0XUw7 (quoting former Colorado Supreme Court Justice Rebecca Love Kourlis).

[32] For a fascinating discussion of the importance of state courts, I commend my colleague's superb article on the subject. Jennifer W. Elrod, *Don't Mess with Texas Judges: In Praise of the State Judiciary*, 37 HARV. J.L. & PUB. POL'Y 629 (2013). As Judge Elrod notes, many Founding-era luminaries preferred state service to a seat on the United States Supreme Court. John Jay, the first Chief Justice of the United States, stepped down to become Governor of New York (which also paid 2.5 times more). John Rutledge left the Supreme Court after two years to become South Carolina's Chief Justice. William Cushing, the first justice to administer a presidential oath and the last to wear a full wig, finished second to Sam Adams for Massachusetts Governor.

matter far more to citizens' everyday lives: "If you ask which court is of the greatest importance to an American citizen, it is not my court."[33] When Justice Brandeis memorably depicted states as laboratories of democracy,[34] he was speaking of policymaking (and in dissent). But it's an apt metaphor for judging too. Our Nation boasts not one Constitution but 51, meaning American constitutionalism concerns far more than what began in Philadelphia 232 years ago.[35]

The Constitution's Full Faith and Credit Clause zealously guards states' sovereignty, guaranteeing that "[f]ull faith and credit shall be given" to the "judicial proceedings of every . . . state."[36] So too Congress's Full Faith and Credit Act,[37] which *implements* the Clause. The Supreme Court in *McCurry* was unsubtle: "Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so."[38]

*Henson* flouted *McCurry* the instant it issued 38 years ago. And *Henson* was thwacked by *Kremer* in the Supreme Court's very next term. In the 37 years since, our unbroken post-*Kremer* precedent rightly pays *Henson* no heed. Instead, our res judicata cases follow—unswervingly—*Kremer*'s § 1738-honoring rule, giving "the same preclusive effect to state court judgments that those judgments would be given" in that state.[39] We do so again today.

---

[33] *See Justice Scalia Honors U.S. Constitution*, GEO. WASH. TODAY (Sept. 18, 2013), https://gwtoday.gwu.edu/justice-scalia-honors-us-constitution.

[34] *See New State Ice Co. v. Liebmann*, 285 U.S. 262, 310 (1932).

[35] *See generally* JEFFREY S. SUTTON, 51 IMPERFECT SOLUTIONS: STATES AND THE MAKING OF AMERICAN CONSTITUTIONAL LAW (2018).

[36] U.S. CONST. art. IV, § 1.

[37] 28 U.S.C. § 1738.

[38] *McCurry*, 449 U.S. at 96.

[39] *Kremer*, 456 U.S. at 466.

No. 17-10952

## III

This leaves Thompson's due process argument—that the City raised its res judicata argument too late, in its reply brief rather than in its original motion to dismiss. We disagree. The City raised it then because the state-court judgment was handed down after the City had filed its motion to dismiss. Not only that, Thompson responded to the City's res judicata argument in her motion for leave to amend.

The district court did not violate Thompson's due process rights. Our precedent on this point is as clear as our precedent on res judicata: A district court does not abuse its discretion when it considers an argument raised for the first time in a reply brief so long as it gives the "non-movant an adequate opportunity to respond prior to a ruling."[40] Here, the district court gave Thompson ample opportunity to respond—and she availed herself of that opportunity.

## IV

The district court was right to dismiss Thompson's suit on res judicata grounds. And doing so did not violate her due process rights, our rule of orderliness, or anything else.

We AFFIRM.

---

[40] *Vais Arms, Inc. v. Vais*, 383 F.3d 287, 292 (5th Cir. 2004) (quoting *Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 545 (5th Cir. 2003)).