832 So.2d 1236 (2002)
Julia W. LANGE, David L. Lange, James S. Whitaker, Jr. and James S. Whitaker, Sr., Appellants,
v.
The CITY OF BATESVILLE, Appellee.
No. 2001-CA-01089-COA.
Court of Appeals of Mississippi.
September 3, 2002.
Pope Shannon Mallette, Oxford, Donna L. Gurley, attorneys for appellants.
*1237 Benjamin E. Griffith, Cleveland, attorney for appellee.
Before SOUTHWICK, P.J., BRIDGES, and BRANTLEY, JJ.
SOUTHWICK, P.J., for the court.
¶ 1. Panola County entered into a development agreement with several landowners. Included was an obligation under certain contingencies to build a public road. The City of Batesville later assumed the County's obligations under the agreement. The landowners are here asserting that the City's failure so far to build the road is a breach of the agreement. We find that since the agreement had no definite time requirement for the construction of the road, that the landowners have not shown that there has yet been a breach. We affirm the lower court's judgment.

STATEMENT OF FACTS
¶ 2. Panola County developed plans for construction of an arena on property east of Interstate 55 and south of Highway 6 East in Batesville, Mississippi. The County's architect, the Warrior Group, LTD, prepared drawings for what was called the "Arena Project." Those drawings included both the layout of the buildings to be constructed as well as parking lots and a five-lane road leading from the project and intersecting with Highway 6. Also included was a topographical map detailing the extent to which certain portions of the property would be leveled.
¶ 3. On July 31, 1996, Panola County entered into an agreement for a temporary easement with James Whitaker, Sr., James Whitaker, Jr., and David and Julia Lange (collectively referred to here as "the Whitakers"). The Whitakers granted to Panola County "a temporary right of entry and temporary easement" to a certain parcel of property which was to the east of the Arena Project property. The Whitaker property and the Arena Project property shared a common boundary. The temporary easement allowed Panola County to enter the Whitaker property for the purpose of removing 70,000 cubic yards of dirt. The project ultimately required 100,000 cubic yards of dirt. Once the removal was complete, the easement and right of entry would terminate.
¶ 4. Several conditions were placed upon the grant of the easement. The condition which is the subject of this litigation reads as follows:
The Grantee [County] has plans to build an expo center and is about to embark upon Phase I thereof. If the Grantee commences Phase 2 of such project within two (2) years of the date hereof, then the Grantors [the Whitakers] agree to dedicate to the county such part of the above described 5.47 acres as may be needed for a public road. If Phase 2 is not commenced within two (2) years but the County has evidenced good faith to commence same within a reasonable period of time, then the Grantors agree to extend the aforesaid two (2) year period for a reasonable time.
The County also agreed to transfer to the Whitakers a .11 acre parcel of property to the east of the road, but only if a road was built.
¶ 5. The County later determined that it did not have the financial resources to continue with the Arena Project. The County began negotiations for transferring ownership to and completing the project by the City of Batesville. The County, in *1238 a letter dated August 3, 1998, requested that the negotiations include a promise by the City to honor the agreement it had entered with the Whitakers concerning the possible construction of a public road.
¶ 6. The County and City signed an agreement on June 16, 1999. The City agreed to complete only Phase I of the Arena Project. The agreement specifically stated that Phase I consisted solely "of the construction of a Stall barn and Multi-Plex Arena." The agreement referred to the plans drawn by the Warrior Group, LTD. The City specifically refused to agree to the construction of any other parts of the project shown on those plans. The City also specifically agreed to "honor the Agreement for Temporary Easement between the County and James S. Whitaker et al dated July 31, 1996...." A copy of the temporary easement was attached to the agreement.
¶ 7. While the Arena Project was proceeding, a new hospital was constructed on property located west of it. Also proposed was the construction of Wal-Mart Super Center between Interstate 55 and the new hospital. For clarity, we note that the Whitaker property was to the east of the Arena Project, while both the hospital and the Wal-Mart store were to the west. All these projects were south of the major west-east road, which was Highway 6.
¶ 8. At a February 18, 2000 meeting of the Board of Alderman for the City, discussion turned to the Arena Project. The minutes note that the "need and placement of roads in the area was also discussed." The minutes note that "Whitaker Road is to be a five lane road." Presumably, this is a reference to the five-lane public road shown on the plans prepared by the Warrior Group, LTD, and the public road that was to be constructed should Phase 2 of the Arena Project commence.
¶ 9. At a May 2, 2000 meeting, the minutes show that the assistant city attorney was authorized by the Board "to draw up appropriate documents to move forward on the agreement between the County and Mr. Whitaker that the City has agreed to honor." A memorandum provided to the Whitakers requested that they sign and have notarized a deed to the City "in fulfillment of [the] agreement with the County." On May 23, 2000, the Whitakers executed a deed donating to the City 4.81 acres of property for the proposed road. The deed did not include specifications for the road such as how many lanes the road might be or when its construction would be completed.
¶ 10. At a September 5, 2000 meeting, the Board decided to delay determining the layout of the roads in the Arena Project area. However, the Board stated that as to the arena, "the main road will be the east most road agreed to in the original agreement between the county and land owners...." The minutes were later amended to specify that the eastern-most road would be the main road if there were two entrances to the property. The Board also authorized a traffic study for the hospital and civic arena area.
¶ 11. At a September 19, 2000 meeting, the minutes show that James "Doc" Whitaker and John Hyneman were present. Mr. Hyneman had donated to the County a portion of his property for construction of the new hospital. Wal-Mart wished to locate its proposed SuperCenter on the remainder of the property owned by Mr. Hyneman near the hospital. The minutes note that both Whitaker and Hyneman "stated their opinions as to the location of the main [road] to this area." The administrator of the hospital also provided the Board with his preference for location of *1239 the main entrance to the area from Highway 6. The Board was informed that the existing entrance was "not adequate for the hospital traffic."
¶ 12. At the October 3, 2000 meeting, the Board discussed in executive session "the location of a large retail outlet near the new hospital." When the Board returned to its public meeting, a motion was adopted that the city engineer be ordered to "draw a road design leaving the current entrance off Highway 6 and the frontage road as is and showing construction of an entrance and road at the east side of the city's property with a road `T-ing' off this `new' entrance and road and running westerly to tie into the hospital road network and thereafter to submit this design layout to the business prospect desiring to construct a retail outlet northwesterly of the new hospital for its consideration." This option would provide a road on the Whitaker property.
¶ 13. Two weeks later, on October 17, 2000, the Board again discussed the issue of road design in the area of the Arena Project. The assistant city attorney stated that Wal-Mart did not approve the road design proposed during the last meeting. The Board decided to adopt "the road configuration as proposed by Wal-Mart in the letters of its attorney...." The construction of this road configuration was made contingent upon the following: (1) obtaining title to two parcels of land, (2) the removal of a building through which the road would pass, (3) funding, and (4) "matters involving the bidding and construction process." The minutes of this meeting note that James "Doc" Whitaker and his attorney were present and objected to Wal-Mart's proposal.
¶ 14. The Whitakers appealed this decision by filing a bill of exceptions. The Whitakers argued that the action of the Board in adopting the Wal-Mart proposal was an "arbitrary and capricious decision of the City of Batesville to alter or ignore its often-stated and often-confirmed obligation to build the `main'or primary road on the strip of land donated, for that purpose, to the City in May of 2000." The Whitakers alleged that the City's decision devalued their property and adversely impacted negotiations entered into with other parties about the sale or development of their property. The Whitakers also alleged that their constitutional rights had been violated.[1]
¶ 15. The circuit court found that "the decision of the Batesville Board of Alderman changing the route and location of the primary road to serve a newly constructed community hospital and other commercial developments was not arbitrary and capricious and should be affirmed." The appeal of the Whitakers was deflected here. Miss.Code Ann. § 9-4-3 (Supp.2001).

DISCUSSION
¶ 16. Like the circuit court, our review of this matter is limited to the record created by the bill of exceptions. Ladner v. Harrison County Bd. of Supervisors, 793 So.2d 637, 639 (Miss.2001). The bill of exceptions is prepared by the parties and "embodies the facts, judgment, and decision involved in the Board proceedings." Ladner, 793 So.2d at 639.
¶ 17. The Whitakers assert that the City breached a contract "at the direction of a competing developer and a *1240 major retailer." The approval of Wal-Mart's proposal was "beyond the power of the City to make" and was arbitrary and capricious. The Whitakers want the City to be ordered to commence building a fivelane road to the Arena Project along the western boundary of their property consistent with the May 23, 2000 deed. They alternatively seek damages.
¶ 18. The City does not deny that it is obligated to build a public road on the property donated by the Whitakers. The City asserts that there has been no breach of the agreement, just that the Whitaker Road has yet to be constructed.
¶ 19. The parties agree that there is a binding contract and that the City is obligated, after having accepted the donated land, to build a public road. The parties do not agree as to the specifics of this agreement. For example, the Whitakers argue that the public road must be a fivelane road with a major intersection with Highway 6. The City argues that the language of the agreement only requires a public road and that it has the authority to determine the public road's dimensions. If there has yet to be a breach of the agreement, this matter is not ripe for adjudication, and the suit should be dismissed. Insured Sav. and Loan Ass'n v. State, 242 Miss. 547, 558, 135 So.2d 703, 708 (1961).
¶ 20. The Whitakers base their claim for breach of contract upon their belief that Whitaker Road will not or cannot now be built. The Whitakers assume that "their" road will not be built because the City approved the road configuration proposed by Wal-Mart. The Whitakers contend that the Board "heard testimony from Mississippi Department of Transportation Officials that it would be unlikely for them to approve two roads of the dimensions promised for the Whitaker road with equal access to Highway 6 within 430 feet of each other where both of those roads were less than one-half mile from Interstate 55." However, there is nothing in the record to support this contention.
¶ 21. Likewise, the record contains no indication by the Board that Whitaker Road will not be built. For there to be a breach of contract on this ground, one of two things could be shown: (1) an unambiguous statement by the Board of Alderman that Whitaker Road will not be built, or (2) an unambiguous statement by the Mississippi Department of Transportation that construction of the Whitaker road will not be permitted because of the Wal-Mart road configuration. Since neither of these exists, there is nothing in the record to prove that Whitaker Road will not be built.
¶ 22. As an appellate court we may not use our power of review "for the purpose of settling abstract or academic questions, and ... we have no power to issue advisory opinions." In Interest of T.H., III, 681 So.2d 110, 114 (Miss.1996). Until there is a breach, we may not properly determine exactly what obligations the City has as to the specifics of a road. It is enough that we are satisfied that no breach of those obligations has occurred.
¶ 23. This is not to say that the City may absolve itself of a possible claim for breach of contract by simply never beginning construction. The City may not in perpetuity continue not to act. This is because the temporary easement agreement does have a time limitation, although an implied one. The temporary easement agreement provides this:
If the Grantee [County] commences Phase 2 of such project within two (2) years of the date hereof, then the Grantors agree to dedicate to the county such *1241 part of the above described 5.47 acres as may be needed for a public road. If Phase 2 is not commenced within two (2) years but the County has evidenced good faith to commence same within a reasonable period of time, then the Grantors [Whitakers] agree to extend the aforesaid two (2) year period for a reasonable time.
¶ 24. The agreement was executed in June 1996. It would appear that Phase 2 of the Arena project was not commenced by 1998, but the Whitakers did not cancel the agreement. Instead, they donated the land to the City in May 2000. The City has conceded that having accepted the donated land, it must build the public road. No time limitation is contained within the contract. A reasonable time for performance will therefore be implied. Associates Commercial Corp. v. Parker Used Trucks, Inc., 601 So.2d 398, 402 (Miss. 1992). The City accepted the donated land in May 2000, a little more than two years prior to our ruling on this appeal. No evidence on a reasonable time to perform under a development contract was introduced, and thus we have nothing to review. At some stage, delay can itself be the breach of the duty to build the road within a reasonable time.
¶ 25. THE JUDGMENT OF THE CIRCUIT COURT OF PANOLA COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR. McMILLIN, C.J., NOT PARTICIPATING.
NOTES
[1] The Whitakers have also filed suit against the City in Cause Number 2:01CV076SB in the United States District Court for the Northern District of Mississippi. That action has been stayed pending resolution of this matter.