United States Court of Appeals
Fifth Circuit

**F I L E D**

**December 21, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 05-60371
_____

JULIA W. LANGE; DAVID L. LANGE; JAMES S. WHITAKER; ESTATE OF
JAMES S. WHITAKER, SR., by and through the Executrix of the
Estate, Joyce Whitaker,

Plaintiffs-Appellants,

versus

CITY OF BATESVILLE,

Defendant-Appellee.

--------------------
Appeal from the United States District Court
for the Northern District of Mississippi
(2:01-CV-076-P-A)
--------------------

Before REAVLEY, DAVIS, and WIENER, Circuit Judges.

PER CURIAM:[*]

Plaintiffs-Appellants the Langes and the Whitakers
(collectively "the Whitakers") sued Defendant-Appellee the City of
Batesville, Mississippi ("the City"), asserting (1) claims under 42
U.S.C. § 1983 for violations of (a) the substantive and procedural
components of the Due Process Clause,[1] and (b) the Takings Clause[2];
and (2) pendent state law claims. The district court granted

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] U.S. CONST. amend. XIV.

[2] Id.

summary judgment to the City, holding that under the doctrines of issue preclusion and Rooker/Feldman, the final judgment of the Mississippi Court of Appeals in Lange v. City of Batesville[3] ("Lange I") precluded relitigation of the dispositive question underlying all claims asserted by the Whitakers. We affirm in part, and vacate and dismiss in part.

## I. FACTS AND PROCEEDINGS

### A. The Agreement

The Whitakers and the City entered into an "Agreement for Temporary Easement" ("the Agreement") in which the Whitakers agreed to transfer to the City an approximately five acre strip of land carved from the edge of their property in exchange for the City's promise to build a "public road" on that land. The Agreement states only that the City is obligated to build a "public road" ("Whitaker Road") on the Whitakers' transferred property; it neither specifies details of size, type, or qualities of the future Whitaker Road, nor sets a time or date by which the road had to be completed. The Whitakers assert, however, that "public road" means more than simply any road open to the public —— they insist that it means the City was obligated to build Whitaker Road as the primary road in the vicinity of their remaining property. The City disagrees. Its position is that the Agreement entitles the Whitakers to a public road, but not to one of any particular size

---

[3] 832 So. 2d 1236 (Miss. Ct. App. 2002).

2

or other characteristics.

**B. The City's First Alleged Breach of the Agreement and the Ensuing State and Federal Litigation**

**1. The City's First Alleged Breach**

In 2000, acting pursuant to the Agreement, the Whitakers transferred approximately five acres of their land to the City for the future construction of Whitaker Road. At that time, however, the Whitakers were not the only parties advocating construction of a road in the area near the Whitakers' property: Wal-Mart had decided to build a store on a parcel in the same vicinity, and it lobbied the City to construct a road connecting its property to the state highway running nearby. Wal-Mart's lobbying efforts proved successful, and, over the Whitakers' objection, the City voted in October 2000 to approve construction of a road on Wal-Mart's property ("House-Carlson Drive").

To the Whitakers, the City's approval of House-Carlson Drive breached the Agreement by violating the City's obligation to make the future Whitaker Road the primary road in the vicinity of the Whitakers' property. To remedy this perceived breach, the Whitakers took two parallel courses of action: (1) In October 2000, they filed a bill of exceptions with the Mississippi Circuit Court of Panola County,[4] and (2) in April 2001, they filed the instant

---

[4] In Mississippi, a bill of exceptions is the sole means available for seeking to overturn the administrative action of a municipality. The state court's review "is limited to the record created by the bill of exceptions." Lange I, 832 So. 2d at 1239.

action in the Northern District of Mississippi, which the district court stayed pending resolution of the state litigation.

## 2. State Court Litigation

In their state bill of exceptions action, the Whitakers contended that by approving construction of House-Carlson Drive, the City breached the Agreement. According to the Whitakers, this breach rendered the City's decision arbitrary and capricious and thus reversible. The state action eventually reached the Mississippi Court of Appeals, which, after full briefing and argument, held that the City's decision to build House-Carlson Drive did not, in and of itself, breach the Agreement.[5] But the court declined to go any further in its ruling, reasoning that a determination of the precise contours of the City's obligations under the Agreement would not be ripe for judicial decision until the City either acted on its conceded obligation to build Whitaker Road in some form or definitively declined to do so. The court did note, however, that because the Agreement does not contain a time limit within which Whitaker Road had to be completed, "[a]

_____

That record "embodies the facts, judgment, and decision involved in the Board proceedings." Id. (internal quotation marks omitted). The court may overturn the municipality's action only if the decision is not supported by substantial evidence, is arbitrary or capricious, is beyond the power of the municipality to make, of if the decision violates a constitutional right of the party challenging the action. Bd. of Supervisors v. McCormick, 42 So. 2d 177, 179 (Miss. 1949).

[5] Lange I, 832 So. 2d at 1240.

4

reasonable time for performance will . . . be implied."[6]

### 3.    Federal Court Litigation of the First Alleged Breach

The Whitakers then returned to federal court to pursue their federal and pendent state law claims.  In essence, the Whitaker's federal theory at this time was that the Agreement entitled them to a "public road" built as the primary road in the area in consideration for the approximately five acres of land that they had transferred to the City.  The Whitakers reasoned that by authorizing construction of House-Carlson Drive — and thus allegedly breaching the Agreement by not giving the Whitakers that to which they claimed entitlement — the City (1) "took" the Whitakers' five acres without providing just compensation, (2) deprived the Whitakers of their property without due process of law, and (3) violated the Whitakers' substantive due process rights.  We shall refer to this first group of taking and due process claims as the "House-Carlson Drive claims."

### C.    The City's Second Alleged Breach of the Agreement and the Ensuing Federal Litigation

In January 2004, while litigation of the House-Carlson Drive Claims was pending in the district court, the City completed construction of Whitaker Road.  Not surprisingly, the Whitakers were unhappy with the road that the City built.  The Whitakers concluded that the City had failed to construct the road within a

---

[6] Id. at 1241.

5

reasonable time, as required by the time limitation implied by Mississippi law in the absence of a specified time in the Agreement. Rather than sue the City in state court for a separate breach of the Agreement, however, the Whitakers stayed in district court and argued that the City breached the Agreement by failing to construct Whitaker Road within a reasonable time. The Whitakers contended that this new breach of the Agreement also effected an unconstitutional taking of their land without just compensation.[7] We shall refer to this second distinct taking claim as the "Whitaker Road Taking claim."

**D.    The District Court's Resolution of the Whitakers' Claims**

The Whitakers were thwarted once again when, in April 2005, the district court granted summary judgment to the City on both the Whitakers' House-Carlson Drive claims and the Whitaker Road Taking claim. The court first held that litigation of the House-Carlson Drive claims was precluded by the state court's judgment in Lange I that in merely authorizing House-Carlson Drive, the City did not breach the Agreement. The district court went on to hold that litigation of the Whitaker Road Taking claim was also precluded, not by the issue preclusive effect of the state court's ruling, but by the Rooker/Feldman doctrine.

---

[7] The Whitakers did not argue to the district court, and do not argue to us now, that the alleged breach of the Agreement arising out of the timeliness of the City's completion of Whitaker Road violated their substantive or procedural due process rights.

6

## II. ANALYSIS

### A.    Standard of Review

We review the district court's grant of summary judgment <u>de novo</u>.[8]  When, as here, there is no genuine issue of material fact, summary judgment is warranted "if . . . the moving party is entitled to a judgment as a matter of law."[9]

### B.    The House-Carlson Drive Claims

The success of the Whitakers' House-Carlson Drive claims hinges on whether the City's authorization of House-Carlson Drive constituted a breach of the Agreement.  We may permit litigation of that question here, however, only if <u>Lange I</u> is not entitled to issue-preclusive effect.  As we hold that <u>Lange I</u> <u>is</u> preclusive, however, we affirm the district court's grant of summary judgment to the City on the Whitakers' House-Carlson Drive claims.

The preclusive effect of a state court judgment in a subsequent federal action is governed by the Full Faith and Credit Act.[10]  Under this statute, final judgments of state courts "have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from

---

[8] <u>Gowesky v. Singing River Hosp. Sys.</u>, 321 F.3d 503, 507 (5th Cir. 2003).

[9] FED. R. CIV. P. 56(c); <u>see also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).

[10] 28 U.S.C. § 1738.

which they are taken."[11]  In other words, we must accord preclusive effect to the <u>Lange I</u> court's final judgment if the law of issue preclusion in Mississippi entitles the judgment to such effect in that state's courts.  In addition, because this case requires us to measure <u>Lange I</u>'s preclusive effect on the dispositive issue in this <u>§ 1983</u> action, <u>Lange I</u>'s holding that the City's authorization of House-Carlson Drive did not breach the Agreement is preclusive only if the Whitakers had a "full and fair opportunity to litigate [that] . . . issue" before the state court.[12]  And when, as here, the putatively preclusive judgment was rendered after only a limited review by the state court of a state executive entity's action,[13] the requirement that there have been a "full and fair opportunity to litigate" is met only if the state proceedings satisfied the <u>minimum</u> procedural requirements of the Due Process Clause.[14]  Therefore, in determining the preclusive effect of <u>Lange I</u> on the House-Carlson Drive claims, we must focus on two questions: (1) Under Mississippi's law of issue preclusion, <u>must</u> other Mississippi courts give the judgment in <u>Lange I</u> preclusive effect, and (2), if so, <u>could</u> a federal court give the judgment such effect without violating the Due Process Clause?

---

[11] <u>Id.</u>

[12] <u>Allen v. McCurry</u>, 449 U.S. 90, 101 (1980).

[13] <u>See</u> <u>supra</u> note 4.

[14] <u>Kremer v. Chem. Constr. Corp.</u>, 456 U.S. 461, 485 (1982).

8

## 1. Mississippi Law Requires Recognizing <u>Lange I</u> As Issue Preclusive

In Mississippi, a prior court judgment precludes relitigation of an issue if the issue was "actually litigated, determined by, and essential to the judgment in [the] former action."[15] We are convinced that under this rule, the district court properly accorded preclusive effect to <u>Lange I</u>'s holding that the City's authorization of House-Carlson Drive, standing alone, did not breach the Agreement. After all, the Whitakers <u>themselves</u> put that question before the <u>Lange I</u> court by expressly arguing that "'[t]he City's decision <u>to abandon a contract</u> . . . is arbitrary and capricious.'"[16] Having framed the issue this way, the Whitakers invited the <u>Lange I</u> court's holding: Despite the City's authorization of House-Carlson Drive, "<u>no breach of [the City's] obligations [under the Agreement] has occurred</u>."[17]

In the context of this case, it is irrelevant that in <u>Lange I</u> this dispositive question arose within the confines of the limited review authorized by Mississippi's bill of exceptions process rather than in a full-blown breach-of-contract action. Like purely legal issues that arise in a traditional common law contract action — the judicial resolution of which would undisputedly be issue

---

[15] <u>Dunaway v. W.H. Hopper & Assocs.</u>, 422 So. 2d 749, 751 (Miss. 1982); <u>see also</u> <u>Raju v. Rhodes</u>, 7 F.3d 1210, 1215 (5th Cir. 1993).

[16] Emphasis added.

[17] <u>Lange I</u>, 832 So. 2d at 1240 (emphasis added).

9

preclusive under Mississippi law[18] —— questions of law in a bill of exceptions action are resolved by the court _de novo_.[19]  And here, the _Lange I_ court faced _only_ questions of law: (1) Whether the term "public road" is ambiguous,[20] which the court had to have decided it is not,[21] and (2) the application of this unambiguous contract term to the undisputed facts of this case.[22]  There is therefore no reason to conclude that the bill of exceptions context of _Lange I_ impinged on or otherwise restricted that court's resolution of these purely legal questions.  Thus, it is a virtual certainty that Mississippi courts would grant issue preclusive effect to the _Lange I_ court's _de novo_ resolution of these questions.

---

[18] See _Harris v. Bd. of Trs. of State Insts. of Higher Learning_, 731 So. 2d 588, 590 (Miss. 1999) (recognizing that the doctrine of issue preclusion applies to contract actions if all elements are met).

[19] See _Hinds County Bd. of Supervisors v. Leggette_, 833 So. 2d 586, 590 (Miss. Ct. App. 2002).

[20] See _Neider v. Franklin_, 844 So. 2d 433, 436 (Miss. 2003).

[21] Although the _Lange I_ court did not _explicitly_ rule that the term "public road" is unambiguous, the court must have found that it was.  Had the _Lange I_ court viewed the term "public road" as ambiguous, it would have had to complete the interim analytical step associated with an ambiguous contract term —— an analysis of extrinsic evidence pertaining to the term's meaning.  See _Neider_, 844 So. 2d at 436.  But the court did not; instead, it ignored any extrinsic evidence and enforced the Agreement as written. See _Lange I_, 832 So. 2d at 1239-41.  Under Mississippi law, such an analytical process is associated with _unambiguous_ contract terms; the _Lange I_ court therefore must have viewed "public road" as such a term.

[22] See _Clark v. State Farm Mut. Auto. Ins. Co._, 725 So. 2d 779, 781 (Miss. 1998).

10

**2. The Whitakers Waived the Argument that Finding <u>Lange I</u> To Be Issue Preclusive Would Violate the Due Process Clause**

In their opening brief, reply brief, and supplemental letter brief, the Whitakers never advanced to us any reason to question the constitutional adequacy of the <u>Lange I</u> proceedings. Instead, the Whitakers impugned the non-judicial process afforded to them <u>by the City</u> prior to its voting to authorize construction of House-Carlson Drive. The sufficiency of that process, however, is <u>not</u> before us today; in this issue preclusion analysis under the Full Faith and Credit Act, we are concerned only with the adequacy of the process afforded the Whitakers <u>in the state courts</u>.[23] The Whitakers have therefore waived any argument that our according preclusive effect to <u>Lange I</u> would violate Due Process.[24] We shall assume that the process was adequate; and, because Mississippi law requires according preclusive effect to <u>Lange I</u>'s holding that the City's authorization of House-Carlson Drive did <u>not</u> breach the Agreement, we affirm the district court's grant of summary judgment to the City on the Whitakers' House-Carlson Drive claims.[25]

---

[23] See <u>Kremer</u>, 456 U.S. at 485.

[24] See <u>Commc'n Workers of Am. v. Ector County Hosp. Dist.</u>, 392 F.3d 733, 748 (5th Cir. 2004); <u>see also</u> FED. R. APP. P. 28(a)(9)(A) (stating that appellant's brief must contain "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies").

[25] The Whitakers also argue that <u>Lange I</u> should not preclude relitigation in this case because they were <u>forced</u> to bring their breach of contract claim through Mississippi's bill of exceptions process. For two reasons, though, this argument is meritless.

11

## C.    The Whitaker Road Taking Claim: Ripeness

The district court resolved the Whitaker Road Taking claim on the ground that federal litigation of the claim is prohibited by the Rooker/Feldman doctrine.  We need not address Rooker/Feldman's effect on this case, however, because the Whitaker Road taking claim is not yet ripe for federal adjudication.  Consequently, the federal courts do not have subject matter jurisdiction to entertain this claim.

Under the Takings Clause, a taking does not occur — and, thus, a taking claim is not ripe — "until (1) the relevant governmental unit has reached a final decision as to what will be

First, the Whitakers' assertion is simply wrong: They were not "forced" to bring their breach of contract claim through the bill of exceptions process.  Under Mississippi law, when a municipality's legislative action allegedly breaches a contract to which the municipality is a party, the aggrieved party may eschew the bill of exceptions process and bring a common law contract action against the municipality. Cf. Bd. of Trs. of States Insts. of Higher Learning v. Brewer, 732 So. 2d 934, 936-37 (Miss. 1999) (permitting a breach of contract claim to be brought against a state administrative agency outside of the limited administrative review process); cf. Gulfside Casino P'ship v. Miss. State Port Auth., 757 So. 2d 250, 255 (Miss. 2000).  Second, as made clear by the Supreme Court's recent decision in San Remo Hotel, L.P. v. City and County of San Francisco, California, even if the Whitakers were forced to litigate the heart of their taking claim in state court, that is not a reason to find that the Lange I decision is non-preclusive:

> As [the Supreme Court has] repeatedly held, . . . issues actually decided in valid state-court judgments may well deprive plaintiffs of the 'right' to have their federal claims relitigated in federal court.  This is so even when the plaintiff would have preferred not to litigate in state court, but was required to do so by statute or prudential rules.

125 S. Ct. 2491, 2504 (2005) (citations omitted); see also id. at 2507.

12

done with the property and (2) <u>the plaintiff has sought</u> <u>compensation through whatever adequate procedures the state</u> <u>provides</u>."[26] The first ripeness prong was obviously satisfied: By building Whitaker Road as it did, the relevant governmental unit —— the City —— rendered a final decision regarding the Whitakers' asserted property interest. But it is equally obvious that the second prong has not been satisfied: The Whitakers have yet to seek compensation through Mississippi's procedures for this alleged taking.[27] The only takings claim for which the Whitakers <u>have</u> sought compensation through state procedures —— and thus the only takings claim in this case that is ripe —— is the House-Carlson Drive taking claim.[28] As the Whitaker Road Taking claim is premised on an alleged breach of the Agreement that is wholly separate and distinct from the breach alleged to underlie the House-Carlson

---

[26] <u>Sandy Creek Investors, Ltd. v. City of Jonestown, Texas</u>, 325 F.3d 623, 626 (5th Cir. 2003) (emphasis added); <u>see also</u> <u>Williamson County Reg'l Planning Comm'n v. Hamilton Bank</u>, 473 U.S. 172, 195-96 (1985).

[27] The Whitakers have admitted that Mississippi's procedures are "adequate." In their brief to us, the Whitakers discuss Mississippi's recognition of claims for inverse condemnation —— the procedure by which "a land owner recovers just compensation for a taking of his property when condemnation proceedings have not been instituted." Alternatively, the Whitakers could file a traditional breach of contract action against the City, seeking as damages the value of the land they deeded to the City and for which they claim to have not been compensated.

[28] The Whitakers' filing of a bill of exceptions to challenge the City's authorization of House-Carlson Drive and their subsequent litigation of that challenge up the Mississippi judicial system rendered that claim ripe.

13

Drive claim, however, the Whitaker Road Taking claim alleges a <u>completely different taking of the Whitakers' land</u>. The ripening of the House-Carlson Drive taking claim, therefore, did <u>not</u> ripen the Whitaker Road Taking claim. Consequently, we vacate the district court's grant of summary judgment to the City on the Whitaker Road Taking claim and dismiss it for lack of subject matter jurisdiction. Our judgment is rendered without prejudice, however, to the Whitakers' right to seek compensation through Mississippi's adequate procedures for this purported taking.

### III. CONCLUSION

We affirm the district court's grant of summary judgment to the City on the Whitakers' House-Carlson Drive claims. We vacate the district court's grant of summary judgment to the City on the Whitaker Road Taking claim, however, and dismiss this claim for lack of subject matter jurisdiction, albeit we do so without prejudice to the Whitakers' entitlement to seek compensation through Mississippi's procedures.

AFFIRMED in part; VACATED and DISMISSED without prejudice in part.